**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JERRY WILKERSON, JR., Plaintiff, v. OAK STREET HEALTH MSO, LLC, Defendant. | No. 24 C 10069 Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jerry Wilkerson, Jr. previously worked for Defendant Oak Street Health, MSO, LLC. After leaving that job, Plaintiff sued Defendant and brought various employment discrimination and contract-based claims. In response, Defendant moved to stay these federal court proceedings and to compel arbitration under the Federal Arbitration Act (FAA). (Dkt. 35.) For the reasons that follow, the Court holds that Plaintiff's claims must proceed to arbitration. Consistent with Section 3 of the FAA and *Smith v. Spizzirri*, 601 U.S. 472 (2024), the case will be stayed pending resolution of that arbitral proceeding.

## I. BACKGROUND

Plaintiff worked for Defendant until September 19, 2023. (Dkt. 1; Dkt. 36 at 2–3.) Although the ending date of that relationship is not disputed, the parties disagree about the total length of Plaintiff's employment. Plaintiff contends that his employment began in 2020; Defendant points to June 22, 2015. (Dkt. 1 at 2; Dkt. 36-

3 at 2.) Defendant has provided a copy of a signed 2015 employment agreement between the parties. (Dkt. 36-2.) It is apparently undisputed that the parties completed a second employment agreement on April 12, 2021. (Dkt. 36-3.)

Plaintiff brought this action against Defendant under the following causes of action: (1) discrimination on the basis of race in violation of Title VII; (2) discrimination on the basis of race in violation of the Illinois Human Rights Act (IHRA); (3) discrimination on the basis of age in violation of the Age Discrimination in Employment Act (ADEA); (4) discrimination on the basis of age in violation of the IHRA; (5) retaliation in violation of Title VII; (6) retaliation in violation of the IHRA; (7) a claim under the Illinois Equal Pay Act; (8) discrimination in violation of 42 U.S.C. § 1981; and (9) breach of contract. (Dkt. 1.) In response, Defendant brought this motion to stay proceedings and compel arbitration under the Federal Arbitration Act based on provisions in the parties' 2015 and 2021 employment agreements. (Dkt. 35.) Both agreements provide for mutual submission of disputes arising out of or relating to the employment agreement to mediation, and, if that effort is unsuccessful, arbitration. (Dkt. 36-2 at 3; Dkt. 36-3 at 3–4.)

## II. LEGAL STANDARD

Under the FAA, mandatory arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA provides that, if an agreement is governed by a valid arbitration clause, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance

with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitrations." 9 U.S.C. § 3. If a party to a contract containing an arbitration clause attempts to avoid arbitration and files suit in the district court, the other party may move to stay or dismiss the action on the grounds that the FAA requires the arbitration clause of the contract to be enforced. *See id.* (authorizing a motion to stay); *see also id.* § 4 (authorizing a petition to compel arbitration); *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 970 (7th Cir. 2007).

When a court determines that the making of the arbitration agreement is not at issue, the FAA requires the court to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4; *Volt Info. Sciences, Inc. v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 474–75 ("[Section 4] confers only the right to obtain an order directing that arbitration proceed in the manner provided for in [the parties'] agreement.") (quotation marks omitted).

As the Seventh Circuit has explained, the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements[,] and questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005) (quotation marks omitted). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998) ("[O]nce it is clear that the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the

arbitration clause are resolved in favor of arbitration.")

## III. DISCUSSION

This section examines whether the parties formed a valid contract; if so, whether the relevant arbitration provisions cover Plaintiffs' claims; and whether any of Plaintiff's claims fall within the exceptions contained in the arbitration provisions. As explained below, the Court finds that the arbitration provisions and the contracts containing them are valid and enforceable and cover each of Plaintiff's claims. Moreover, none of Plaintiff's claims is subject to any exception contained in the arbitration provisions. Accordingly, the case must be stayed, and the parties directed to proceed to arbitration.

### A. The Parties' 2015 and 2021 Employment Agreements are Valid Contracts

Plaintiff and Defendant entered into employment agreements (which included arbitration provisions) on June 22, 2015, and April 12, 2021.[1] (Dkt. 36-2; Dkt. 36-3.) Illinois law governs the agreements (Dkt. 36-2 at 6; Dkt. 36-3 at 6), and these choice-of-law provisions will be enforced "as long as they are reasonable." *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 973 (7th Cir. 2013). Nothing in the record suggests that the parties' choice of Illinois law is unreasonable. *See Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993). When deciding whether the parties agreed to arbitrate a certain matter, courts "generally . . . should apply ordinary state-law

[1] The 2021 agreement states that, unless otherwise provided, it supersedes all previous agreements. (Dkt. 36-3 at 5.) In any event, the relevant provisions in the 2015 and 2021 agreements are materially similar for purposes of resolving the present motion.

principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). As a result, the Court will apply Illinois law to the relevant agreements.

An agreement to arbitrate "is treated like any other contract." *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997). In Illinois, this means that formation of an arbitration agreement is evaluated under an objective theory of contract formation. *See Gupta v. Morgan Stanley Smith Barney*, LLC, 934 F.3d 705, 711–712 (7th Cir. 2019). An offer, acceptance, and consideration are "the basic ingredients of a contract" in Illinois. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006). Because the employment agreements (including their arbitration provisions) satisfy these requirements, they are enforceable contracts.

Each signed employment agreement constitutes an offer by Defendant and an acceptance by Plaintiff. Acceptance of an offer is manifested through outward expressions and actions, not subjective intentions, evaluated "through the lens of an objectively reasonable person." *Gupta*, 934 F.3d at 711. A party may manifest assent by signing a contract or continuing employment. *Dirth v. Oak St. Health, Inc.*, No. 24 C 5290, 2025 WL 524142, at *2 (N.D. Ill. Feb. 18, 2025); *Melena*, 847 N.E.2d at 109. Plaintiff assented to the employment agreements and arbitration provisions. Not only did he sign both documents (Dkt. 36-2 at 7, 11; Dkt. 36-3 at 7, 12), Plaintiff continued his employment until 2023 (Dkt. 1 at 19).

Both arbitration agreements are also supported by adequate consideration. Under Illinois law, continued employment "is sufficient consideration for the

enforcement of employment agreements." *Melena*, 847 N.E.2d at 109. In addition, an agreement that binds both parties to arbitration has sufficient consideration. *Koveleskie v. SBC Cap. Markets, Inc.*, 167 F.3d 361, 368 (7th Cir. 1999). Both the 2015 and 2021 arbitration agreements bind each party. (Dkt. 36-2 at 3; Dkt. 36-3 at 3.) As the record reflects, the requirements of offer, acceptance, and consideration are shown by the employment agreements. They therefore are—absent some defense to contract formation—valid contracts.

Perhaps recognizing the facial validity of the relevant agreements, Plaintiff argues that the 2021 employment agreement is procedurally unconscionable. (Dkt. 37 at 14.) That argument is a nonstarter.

Procedural unconscionability is assessed with regard to the circumstances surrounding a transaction, including the way the contract was formed and whether each party had a reasonable opportunity to understand the contract's terms. *Matricciani v. Am. Homeowner Pres., Inc.*, 718 F. Supp. 3d 825, 837 (N.D. Ill. 2024) (citing Illinois precedent). To determine procedural unconscionability, a court must consider factors such as "whether important terms were 'hidden in a maze of fine print'," "whether each party had the opportunity to understand the terms of the contract," and "all of the circumstances surrounding the formation of the contract" including the sophistication of the parties. *Phoenix Ins. v. Rosen*, 949 N.E.2d 639, 647 (Ill. 2011) (citing *Kinkel v. Cingular Wireless L.L.C.*, 857 N.E.2d 250, 264–65 (Ill. 2006)).

As the party challenging the contract, Plaintiff bears the burden to prove

unconscionability. *Matricciani*, 718 F. Supp. 3d at 837 (N.D. Ill. 2024). Plaintiff does not cite any authority in the section of his brief concerning unconscionability. In another section of the brief, however, Plaintiff cites *Turner v. Concord Nursing & Rehab Center, LLC*, in which the Appellate Court of Illinois found that an arbitration agreement was procedurally unconscionable because the party "had little choice in accepting the terms" (despite that the contract itself said that the term could be negotiated). 218 N.E.3d 456, 459 (Ill. App. Ct. 2023). Plaintiff argues that the arbitration provision in his employment contract is unconscionable because he could not opt out, despite the contract's statement that "both parties had the opportunity to negotiate over the terms of this paragraph and knowingly and voluntarily agree to its terms." (Dkt. 37 at 14; Dkt. 36-3 at 3.)

*Turner* is distinguishable. In that case, the court noted plaintiff's medical issues, which made it difficult for him to read, comprehend language, and speak (which in turn would have precluded effective negotiation and attorney review), as well as that the arbitration agreement was buried 115 pages into the agreement. 218 N.E.3d at 456. Those troubling conditions are not present here. There is no evidence that Plaintiff would not have been able to successfully negotiate the arbitration agreement. And Illinois has "rejected the argument that a 'take-it-or-leave-it' basis renders an agreement unenforceable." *Matricciani*, 718 F. Supp. 3d at 838.

Plaintiff also contends that the 2021 arbitration agreement violates public policy (Dkt. 37 at 14), an argument that sounds in substantive unconscionability. Assessing whether an agreement is substantively unconscionable requires a court to

consider whether the terms of a contract are "so one-sided as to oppress or unfairly surprise an innocent party." *Phoenix*, 949 N.E.2d at 656. But as the Seventh Circuit has explained, substantive unconscionability arguments relating to employment arbitration agreements are often futile: businesses "regularly agree to arbitrate their disputes with each other; giving employees the same terms and forum (the AAA) that a firm deems satisfactory for commercial dispute resolution is not suspect," and "[e]mployees fare well in arbitration with their employers—better by some standards than employees who litigate, as the lower total expenses of arbitration make it feasible to pursue smaller grievances and leave more available for compensatory awards." *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004).

Plaintiff is concerned that arbitration may pose difficulties such as limited discovery, confidentiality, and high costs, but Plaintiff has not established that these difficulties are inordinately one-sided. (Dkt. 37 at 21.) Indeed, Defendant may also face the same difficulties. And although Plaintiff is correct that arbitral procedures often may be less suited to the final resolution of Title VII claims, *see Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 56 (1974), that alone is insufficient to override the parties' agreement given that there is also federal and state policy that favors arbitration agreements. *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005); *Phoenix*, 949 N.E.2d at 647.[2]

---

[2] Unlike the arbitration agreement in the Washington state case cited by Plaintiff, the parties' arbitration agreement does not limit damages. As in *Melena*, because the arbitration agreement here "does not cause plaintiff to forgo the full range of remedies available at law," arbitration "can serve the same remedial and deterrent functions as litigation." 847 N.E.2d at 111.

As a final point, Plaintiff cites the Seventh Amendment as evidence of public policy in favor of his ability to seek redress in court. But the Seventh Amendment right to a jury trial is waivable, which is what happens when parties consent to an arbitration agreement. *Koveleskie*, 167 F.3d at 368; *see also Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 957 F. Supp. 1460, 1471 (N.D. Ill. 1997) ("If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes"). Federal and Illinois policy both favor arbitration agreements. *Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d 959, 968 (N.D. Ill. 2020); *Salsitz v. Kreiss*, 761 N.E.2d 724, 730–31 (Ill. 2001), *as supplemented on denial of reh'g* (Dec. 3, 2001). This pro-arbitration policy can peacefully coexist with the Seventh Amendment.

Plaintiff nonetheless contends that "a waiver of constitutional or statutory rights must be clear and unmistakable" and that the arbitration clause was hidden in the 2021 agreement. (Dkt. 37 at 14.) But the arbitration agreement was not hidden: it is found on the third and fourth pages of a twelve-page document and is clearly marked with the heading "Alternative Dispute Resolution." (Dkt. 36-3 at 3–4.)

Plaintiff also lacks support for the application of this heightened standard. Plaintiff cites to precedent from the Ninth Circuit requiring a knowing and voluntary agreement to an arbitration provision. (Dkt. 37 at 11–12.) But Illinois law, which applies here, has expressly rejected the knowing and voluntary standard, instead basing the analysis on fundamental principles of contract law. *Melena*, 847 N.E.2d at 107. In short, by signing agreements that contained arbitration provisions, Plaintiff waived his Seventh Amendment and statutory rights. As a result, the arbitration

provisions are enforceable.

### B. The 2015 and 2021 Arbitration Agreements Cover Each of Plaintiff's Claims

If it is determined that parties have entered into an agreement that "provides for arbitration of some issues between them," questions regarding the scope of the arbitration agreement are "resolved in favor of arbitration as a matter of federal law." *Miller v. Flume,* 139 F.3d 1130, 1136 (7th Cir. 1998). A court "should compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Acaley*, 464 F. Supp. 3d at 968 (quoting *Granite Rock Co. v. Int'l Bhd. Of Teamsters,* 561 U.S. 287, 314 (2010)); *see also United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.")

As the relevant arbitration provisions state, any controversy or claim "arising out of or relating to this Agreement or the breach thereof, or any other dispute between the parties" shall be submitted to mediation, and, if the parties cannot agree on a mediator or mediation is unsuccessful, arbitration. (Dkt. 36-2 at 3; Dkt. 36-3 at 5.) As a starting point, both "arising out of" and "relating to" are to be read broadly when interpreting arbitration agreements. *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012). This language covers each of Plaintiff's claims.

Plaintiff's breach of contract claim arises out of the 2021 employment

agreement and is thus well within the scope of the 2021 arbitration agreement. Plaintiff's remaining claims are likewise fairly construed as "arising out of" or "relating to" the employment agreements. For instance, Plaintiff's race discrimination claims under Title VII and IHRA, age discrimination claims under the ADEA and the IHRA, retaliation claims under Title VII and the IHRA, and Illinois Equal Pay Act claims are all predicated on the parties' employment relationship and Defendant's alleged interference with the contractual conditions of Plaintiff's employment. Plaintiff's 42 U.S.C. § 1981 discrimination claim is closely tied to his role and compensation, factors that are also contained within the employment agreements. (Dkt. 36-2 at 1–2; Dkt. 36-3 at 2–3.)

As the Seventh Circuit has explained, the phrase "arising out of" reaches "all disputes having their origin or genesis in the contract." *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993). Each of Plaintiff's claims arise out of the employment agreements. Given the broad language of the arbitration agreements, unless one of the arbitration agreements' exceptions apply to these claims, it cannot be said "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *See United Steelworkers*, 363 U.S. at 582–83.

There are three exceptions contained in the relevant arbitration agreements. First, claims by Plaintiff for medical and disability benefits or unemployment benefits under the Workers' Compensation Act and Unemployment Insurance Acts are excepted. (Dkt. 36-2 at 3; Dkt. 36-3 at 5.) Second, the arbitration agreements do not

apply to "any Charge of Discrimination filed by Employee against the Company with the U.S. Equal Employment Opportunity Commission, the Illinois Department of Human Rights, the Chicago Commission on Human Relations, or charges filed with the National Labor Relations Board under the National Labor Relations Act." (Dkt. 36-2 at 3; Dkt. 36-3 at 5.) Finally, claims by Defendant for injunctive or equitable relief are not covered by the arbitration agreements. (Dkt. 36-2 at 4; Dkt. 36-3 at 5.)

In Illinois, exceptions or reservations in a contract "will, in case of doubt or ambiguity, be construed least favorably to the party claiming the benefit of the exceptions or reservations." *Parker v. Arthur Murray, Inc.*, 295 N.E.2d 487, 490 (Ill. App. Ct. 1973). In this case, this means that the contractual exceptions should be construed narrowly. This is even more so the case in a contract for arbitration, as doubts concerning the scope of an arbitration clause "should be resolved in favor of coverage." *United Steelworkers*, 363 U.S. at 582–83.

Neither the first nor third exceptions apply to preclude arbitration. Plaintiff does not make a claim for medical, disability, or unemployment benefits; nor does Plaintiff make any claim for equitable or injunctive relief. Plaintiff contends, however, that the second exception applies and precludes arbitration. But this litigation is not a "Charge of Discrimination filed by Employee against the Company with the U.S. Equal Employment Opportunity Commission, the Illinois Department of Human Rights, the Chicago Commission on Human Relations, or charges filed with the National Labor Relations Board under the National Labor Relations Act." (Dkt. 36 at 5.) Plaintiff argues that the exception is nonetheless triggered because he filed

a charge with the EEOC before filing this action. (Dkt. 37 at 12.)

This second exception to arbitration recognizes that individuals subject to an arbitration agreement "will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991). Similarly, the NLRB has held that arbitration agreements that do not make exceptions for administrative claims violate Section 8(a)(1) of the NLRA. *Beena Beauty Holding, Inc. d/b/a Planet Beauty & Michael Sanchez*, 368 NLRB No. 91 (Oct. 8, 2019). In this case, the plain language of the exception does nothing more than allow such administrative claims to proceed without being shunted to an arbitral forum.

Accordingly, the EEOC would be free to instigate an action against Defendant despite the arbitration agreement. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 288 (2002). This does not mean, however, that the Commission's failure to do so granted Plaintiff the same ability. It is indisputable that the EEOC is not a party to (and thus not bound by) the arbitration agreement that binds Plaintiff. *See Id.*; *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) ("the general rule is that non-signatories are not bound to arbitration agreements.") In the absence of broader language within the exception to the parties' arbitration agreements, Plaintiff may only pursue his affirmative claims in an arbitral forum.

## IV. CONCLUSION

Defendant's motion to stay proceedings and compel arbitration is granted.

SO ORDERED in No. 24 C 10069.

Date: September 15, 2026

JOHN F. KNESS
United States District Judge